IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


FRANCIS WICKLANDER,                                         CV 04-804 AS

       Plaintiff,                                          OPINION AND ORDER

      v.

DEFINED BENEFIT PENSION
PLAN OF AGC-INTERNATIONAL
UNION OF OPERATING ENGINEERS
LOCAL 701 PENSION TRUST FUND,

       Defendant.

Megan E. Glor
Swanson, Thomas & Coon
The American Bank Building
621 S.W. Morrison Street, Suite 900
Portland, Oregon 97205-3892

    Attorneys for Plaintiff

Bruce A. Rubin
Alyssa E. Tormala
Miller Nash LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon 97204-3699
    Attorneys for Defendant


1 - OPINION AND ORDER

ASHMANSKAS, Magistrate Judge:

Plaintiff Francis Wicklander seeks to recover disability benefits pursuant to the terms of the Defined Benefit Pension Plan of AGC-International Union of Operating Engineers Local 701 Pension Trust Fund ("the Plan"). At issue are cross-motions for summary judgment.

## STIPULATED FACTS

Plaintiff was a member of the International Union of Operating Engineers Local 701 ("Local 701") and was a participant in the Plan. The Plan requires that a participant be totally and permanently disabled to be eligible for benefits. Section 10.1 of the Plan defines "total and permanent disability" as:

> "disability by bodily injury, disease, or mental disorder which, on the basis of medical evidence, is found by the Trustees to be permanent and continuous during the remainder of the Participant's lifetime and which will render the Participant incapable of any regular employment or occupation substantially gainful in character."

Francis Wicklander is 59 years old and has no education or training in any field other than construction. Wicklander was a business agent for Local 701 from September 1980 through September 1986. From September 1986 until September 1995, he was business manager financial secretary, and was also either Chairman or Secretary of ACG-Operating Engineers Trust Funds. In that capacity, he was Chairman for nine years of the review committee, which approved all pension applications, including disability pension applications, for the Trust.

While Wicklander was Chairman of the review committee, the Trust:

> "routinely approved disability retirement claims for Trust members who had been awarded Social Security disability benefits. In cases where the decision had not been received from the Social Security Administration at the time the disability retirement claim was submitted to the Trust, the

> standard procedure was to either grant benefits, if the
> claimant's treating physician was of the opinion that the
> claimant was disabled, or to hold the claim pending until
> the Social Security Administration had made its decision.
> At that point, if the Administration awarded benefits, the
> Trust would approve the claim." Plaintiff's Ex. 1, pg. 2.

Wicklander knows of no claim in which the Trust denied a disability pension if the claimant provided notice that his Social Security disability had been granted. In August 1995, Wicklander ran for re-election for Business Manager of Local 701. He lost the election to Mark Holliday.

In March 1999, Wicklander was thrown from a horse and sustained fractures to the C3-6 vertebrae. His treating physician, Guy Gehling, M.D., opined that Wicklander was "totally and permanently disabled from returning to any type of gainful employment."

In June 1999, Wicklander filed a claim for disability benefits with the Plan, claiming disability effective March 1999 and requesting benefits effective October 1999.

In or about July 1999, Rob Cook, Holliday's assistant, told Wicklander "that Mr. Holliday had stated to him that he was going to make me jump through every hoop he could before my disability claim would be granted." *Id.* Defendant contends that this statement is inadmissible hearsay. Though I am inclined to believe that defendant is correct, admitting the statement for the purposes of this analysis is not prejudicial to defendant.

On July 19, 1999, the Plan Trustees denied Wicklander's claim based on the trust physician's opinion that it was too early to determine permanent disability. On reconsideration in November 1999, the Trust physician opined that Wicklander was not disabled, and his claim was denied.

In August 1999, Wicklander was told by Conella Taylor, the Local 701 Pension

Coordinator, "not to worry, that once I got my Social Security there was nothing Mark could do to keep me from getting my pension." Susan Smith, Trust Manager, "said that wasn't necessarily true, that she spoke with Mark, and he had asked her to review the Trust document to see if the Trust plan stated disability claims must be approved if the Social Security claim had been approved, or whether this was just past practice." *Id.,* at 2-3. Again, defendant argues that these statements are inadmissible, but admission is not prejudicial to defendant.

In May 2000, Wicklander provided the Trust with the Social Security Administration's approval of his disability claim with a disability onset date of September 1999.

In June 2000 the Plan Trustees requested an updated physician's report, and on August 10, 2000, B. Atwood, M.D., opined that Wicklander was totally and permanently disabled.

The Plan's administrative office recommended approval of Wicklander's claim. The Trustees referred him to an independent medical examination conducted by Paul Williams, M.D. Dr. Williams opined that Wicklander could work at a light duty status, and the Trustees denied his claim in March 2001.

At the Trust's request, Dr. Williams wrote a second report in January 2002, in which he opined that Wicklander could work at a light or sedentary position. The Plan denied Wicklander's claim again in February 2002.

Two of Francis Wicklander's treating physicians opined that he was totally and permanently disabled. The Plan's non-examining consulting physician and two independent medical examiners opined that he was capable of light or sedentary work.

The Plan provided a claims summary which indicates that five of 115 claims filed between 1992 and 2002 were ultimately denied during that time period. These numbers do not

include the claims filed by plaintiff or his brother, Daniel Wicklander. Two denials were upheld after an internal appeal, other than the Wicklander appeals.

Forty one of the 115 claimants either did not receive Social Security benefits or provided no information about Social Security benefits. Seven of the 115 claimants received benefits under the Plan but did not receive Social Security benefits. Two of the claimants received benefits under the Plan though their Social Security benefits were denied. The only claimants for whom independent medical examinations were required were plaintiff and his brother.

## LEGAL STANDARDS

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. V. Catrett,* 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)).

"If the moving party meets its initial burden of showing 'the absence of a material and triable issue of fact,' 'the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense.'" *Intel Corp. v. Hartford Accident & Indem. Co.,* 952 F.2d 1551, 1558 (9th Cir. 1991)(quoting *Richards v. Neilsen Freight Lines,* 810 F.2d 898, 902 (9th Cir. 1987)). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex,* 477 U.S. at 322-23. All reasonable doubt as to the existence of a genuine issue of fact must be resolved against the moving party. *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88 (1986). The court should view inferences drawn from the facts in the light most favorable to the nonmoving party. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n.,* 809 F.2d 626, 630-31 (9th Cir. 1987).

## STANDARD OF REVIEW

The parties dispute the correct standard of review to be applied. Plaintiff contends that the court should review the Plan's decision *de novo* because of taint in the claims process. The parties agree that the Plan reserves to the Trustees the discretion to determine eligibility for benefits, and that absent a showing of taint in the claims process, an abuse of discretion standard applies. *Atwood v. Newmont Gold Co., Inc.,* 45 F.3d 1317, 1321 (9th Cir. 1995).

A heightened standard of review is appropriate if a plan gives discretion to an administrator or fiduciary who is operating under an 'apparent' conflict of interest. *Atwood,* 45 F.3d at 1322. The apparent conflict of interest triggers heightened review when the plan administrator has a financial or economic interest in the benefit decisions it makes. In *Atwood,* the plan administrator was also the employer. The *Atwood* court determined that to be entitled to *de novo* review a claimant must show that the conflict caused the benefit decision:

> We ultimately apply a traditional abuse of discretion standard to the decisions of apparently conflicted employer-or insurer-fiduciaries *unless* the affected beneficiary comes forward with further evidence indicating that the conflicting interest caused a breach of the administrator's fiduciary duty to the beneficiary.
> . . .
> The 'less deferential' standard under which we review apparently conflicted fiduciaries has two steps. First, we must determine whether the affected beneficiary has provided material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary. If not, we apply our traditional abuse of discretion review. *Atwood,* 45 F.3d at 1323.

6 - OPINION AND ORDER

Assuming, without deciding, that plaintiff has established an apparent conflict of interest in the form of personal animus between a Trustee and himself, he has not provided evidence that that conflict caused the benefit decision. Plaintiff's claim was denied by a committee of at least two Trustees, one of whom may have expressed personal animus against plaintiff. There is no evidence that any animus expressed by one Trustee influenced the other decision-making Trustee. Defendant's Ex. 2, p. 13. Accordingly, this court must review the Plan's decision for an abuse of discretion.

## DISCUSSION

A plan administrator acts arbitrarily and capriciously when its "decision is 'so patently arbitrary and unreasonable as to lack foundation in factual basis .'" *Taft v. Equitable Life Assur. Soc.,* 9 F.3d 1469, 1473 (9th Cir. 1993)(internal quotation marks and citations omitted). A plan administrator's factual determinations may not be overturned unless they are "clearly erroneous." *Jones v. Laborers Health & Welfare Trust Fund,* 906 F.2d 480, 482 (9th Cir. 1990). A plan administrator may not arbitrarily disregard medical evidence provided by a claimant, but the administrator has no obligation to give special weight to the opinions of the claimant's treating physician. *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 834 (2003). The *Nord* Court held that ERISA plan administrators cannot be required to accord special weight to the opinions of a claimant's physician "nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Nord,* 538 U.S. at 834.

Where the medical evidence conflicts, the Plan's denial of disability benefits must be sustained:

7 - OPINION AND ORDER

> [A]s long as the record demonstrates that there is a reasonable basis for concluding that the medical condition was not disabling, the decision cannot be characterized as arbitrary, and we must defer to the decision of the plan administrator.
>
> The administrator here had conflicting reports from Jordan's treating physicians and MetLife's reviewing physicians. This is typical of the evidence used in disability determinations. Reasonable people can disagree on whether Jordan was "disabled" for purposes of the ERISA plan. Because that is so, the administrator cannot be characterized as acting arbitrarily in taking the view that she was not. *Jordan v. Northrop Grumman Co. Welfare Benefit Plan,* 370 F.3d 869, 879-80 (9th Cir. 2004).

Three physicians found plaintiff retained the capacity for some work. The statistics as to the Plan's disposition of other claims are not dispositive. As defendant points out, "the summary document shows no set pattern with regard to claim decisions that supports plaintiff's theory of bias and animus on the part of the Trustees." Defendant's Response, p. 4.

There is no issue material fact. The Plan's determination that plaintiff was not disabled within the meaning of the Plan was not arbitrary.

Plaintiff's motion (# 40) for summary judgment is denied. Defendant's second motion (# 35) for summary judgment is granted.

Dated this 25th day of May, 2005.

        /s/ Donald C. Ashmanskas
        Donald C. Ashmanskas
        United States Magistrate Judge